UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARVIN KAM CONSTRUCTION COMPANY,<br><br>           Plaintiff,<br><br>   v.<br><br>ENVIRONMENTAL CHEMICAL CORPORATION,<br><br>           Defendant. | Case No. 16-cv-02643-JD<br><br>**ORDER RE MOTION TO DISMISS** |

Plaintiff Arvin Kam Construction Company ("AKCC"), an Afghanistan corporation, has sued defendant Environmental Chemical Corporation ("ECC" or "ECCI") on fraud and contract claims relating to a United States Army Corps of Engineers contract. Dkt. No. 1. ECC has moved to dismiss the complaint, Dkt. No. 12, and the Court finds that dismissal is warranted, although on different grounds. *Gillibeau v. City of Richmond*, 417 F.2d 426, 431 (9th Cir. 1969) (court may dismiss *sua sponte*).

The fundamental problem with the complaint is that fails to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While the Court will assume that AKCC's factual allegations are true and will construe all reasonable inferences in its favor, *Gompper v. VISX, Inc.*, 298 F.3d 893, 895 (9th Cir. 2002), it will not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quotation omitted).

Even when reviewed under these relatively generous standards, the "Statement of Facts" and other portions of the complaint are cursory and disjointed to the point of obscurity. AKCC starts with the allegation that the Army Corps of Engineers awarded a contract to ECC in September 2010 for construction work in northern Afghanistan. Dkt. No. 1 ¶¶ 6-8. ECC hired AKCC as a local subcontractor, but in July 2012, the "Commander of USCENTCOMM determined that AKCC was actively supporting an insurgency" in Afghanistan. *Id.* ¶ 11. ECC wasn't sure what do with that information, and asked a contracting officer how to proceed. *Id.* The officer "directed" ECC to terminate the AKCC contract, which it did in August 2012. *Id.* ¶¶ 12-13. Even though the contract appears to have been cancelled on public policy grounds for doing business with an enemy of the United States, AKCC alleges that it signed a "Settlement Agreement and Release of Claims (the 'Agreement')" with ECC in January 2013 for $1.5 million dollars. *Id.* ¶ 14.

The next set of fact allegations is almost impossible to follow. AKCC says that the parties subsequently entered into "two agreements called Further Clarification of Settlement Agreement and Release of Claims" to address "the issue of Request for Equitable Adjustments ('REA')". *Id.* ¶ 15. The complaint states (in two paragraphs numbered "16"):

> 16. Under Clarification #1, ECCI agreed to process the REA for additional work on Task Order 78 as approved by the United States government in the amount of $414,240.00. ECCI agreed to deduct $100,000 and $50,000 to compensate ECCI for REAs submitted to date.

> 16. Under Clarification #2, AKCC was obligated to assist ECCI with all supporting documentations for submitting future REAs. To effectuate this obligation, AKCC was mandated to bring its engineers to Dubai United Arab Emirates and assist ECCI in writing the future REAs. AKCC paid for cost of travel and lodging of several engineers and employees and wrote the REAs for ECCI. AKCC's REAs totaled in the amount of $3,252,205.00.

These events, which are not explained in any more detail or with greater clarity, allegedly occurred after AKCC's contract had been terminated on enemy insurgent grounds.

The complaint then returns to the settlement agreement to state that an employee signed it without authorization while AKCC's owner and president was in jail. *Id.* ¶¶ 18-19. It concludes

2

with cryptic references to ECC's compensation for an REA and an administrative claim it allegedly filed. *Id.* ¶¶ 20-22.

That is the sum total of the operative facts, and what they amount to legally, if anything, is an utter mystery. AKCC alleges several claims sounding in fraud, but does not even come close to stating, as Federal Rule of Civil Procedure 9(b) requires, "'the who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (quotation omitted). The contract claims are equally deficient. Among other problems, none of the actual terms of any alleged agreement are presented and no specific breach is spelled out or identified. AKCC also says some of the agreements with ECC were "unconscionable," *see, e.g.*, Dkt. No. 1 ¶ 43, but puts no meat at all on that bare bone. A claim for promissory estoppel simply parrots the elements without anything more, a defect that affects several other claims as well.

Overall, the complaint falls far short of the pleading requirements of Federal Rule of Civil Procedure 8(a) and applicable case law. The Court could dismiss it under Rule 41(b) on that ground, *see Nevijel v. N. Coast Life Ins. Co.*, 651 F.2d 671, 673 (9th Cir. 1981), but will allow AKCC one opportunity to amend. Any amendment is due by **January 24, 2017**. No new parties or claims may be added.

The parties' dueling requests for sanctions under 28 U.S.C. § 1927 are denied. The parties are advised that requests for sanctions should be reserved for the most egregious and serious instances of misconduct, and not casually added to motions papers. In the future, the Court will summarily strike sanction requests that do not follow this guideline, and may award fees and costs, and other sanctions, against the offending party.

**IT IS SO ORDERED.**

Dated: January 10, 2017

_____
JAMES DONATO
United States District Judge